CC-2000-216                                                          1

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Israel García Rivera,<br>Madeline Vélez Rivera y otros<br>      Demandantes-Peticionarios<br><br>          v.<br><br>José R. Enríquez Marín,<br>Fulana de Tal y otros<br>      Demandados-Recurridos | Certiorari<br><br>2001 TSPR 12 |

Número del Caso: CC-2000-216

Fecha: 2/febrero/2001

Tribunal de Circuito de Apelaciones:

                              Circuito Regional IV

Juez Ponente:

                              Hon. Roberto L. Córdova Arone

Abogados de la Parte Peticionaria:

                              Lcdo. Rafael A. García López
                              Lcdo. Harry Anduze Montaño

Abogado de la Parte Recurrida:

                              Lcdo. Roberto Madera Acosta

Materia: Daños y Perjuicios

          Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Israel García Rivera,
Madeline Vélez Rivera, y
Otros

 Demandantes-Peticionarios

       v.

                                        CC-2000-216          Certiorari

José R. Enríquez Marín,
Fulana de Tal, y otros

 Demandados-Recurridos

Opinión del Tribunal emitida por el Juez Asociado señor Rivera Pérez.

San Juan, Puerto Rico, a 2 de febrero de 2001.

El presente recurso plantea ante esta Curia la interrogante de si es procedente conceder una solicitud de producción de documentos presentada por el demandante-lesionado contra el Fondo del Seguro del Estado, así como la pretendida toma de deposición a uno de sus funcionarios. Mediante dicho descubrimiento de prueba, el demandante-lesionado intenta obtener información relacionada con la cubierta del seguro patronal de las codemandadas, para así poder estar en condiciones de presentar una adecuada oposición a la solicitud de sentencia sumaria. La contestación es en la afirmativa. Se expide el auto solicitado y se revoca la sentencia recurrida.

I

El 1ro. de febrero de 1999, el codemandante, señor Israel J. García Rivera, instó una demanda juramentada de daños y perjuicios contra el señor José R. Enríquez Marín,[1] Quez Construction Corporation (en adelante, Quez), North West Construction Corporation (en adelante, North West), y sus respectivas aseguradoras, entre otros. Según se desprende de las alegaciones de la demanda, el 4 de febrero de 1998, el señor García Rivera sufrió un accidente ocupacional durante la reparación de la verja de una residencia.[2] Alegó que mientras trabajaba dentro de una zapata, un piso de concreto cedió, cayendo sobre él, y aprehendiéndolo por aproximadamente una hora y cuarenta y cinco minutos (1:45). Adujo que, como consecuencia de dicho accidente, sufrió múltiples daños físicos, tales como: fracturas, laceraciones en órganos internos y externos, desgarres musculares y siete intervenciones quirúrgicas, entre otros.[3] Sostuvo que la codemandada Quez era su patrono y que al momento del accidente se encontraba bajo la supervisión directa del señor William Mercado, quien se desempeñaba como supervisor de obra de dicha codemandada. Además, alegó que, fraudulentamente y en común acuerdo con Quez, la codemandada North West notificó el referido accidente ocupacional al Fondo del Seguro del Estado (en adelante, el Fondo),[4] como si el demandante-lesionado, señor García Rivera, fuese su empleado. El demandante-lesionado sostuvo, que mediante dicha notificación se pretendía impedir que él dirigiera su reclamación contra Quez, quien al momento de los hechos no era un patrono asegurado.

La codemandada North West solicitó al Tribunal de Primera Instancia que dictara sentencia sumaria desestimando la reclamación, por la alegada ausencia de controversia real sustancial.[5] Adujo como hechos incontrovertidos, que al momento del accidente ocupacional era un patrono asegurado y que el demandante-lesionado era su empleado, y no de Quez.[6] Por tanto, de conformidad con nuestro ordenamiento jurídico, en caso de lesiones de empleados cuyos patronos estén asegurados por el Fondo, éstos carecen de causa de acción por daños y perjuicios contra sus patronos.[7] En su solicitud de sentencia sumaria, North West

---

[1] Según se alega en la demanda, el señor Enríquez Marín controla directa o indirectamente a Quez Construction Corporation. Véase, Apéndice del recurso de Certiorari, pág. 2.

[2] Los propietarios de la residencia donde se efectuaron las referidas reparaciones también fueron demandados, por alegadamente no proveer un lugar seguro de trabajo y no estar asegurados por el Fondo del Seguro del Estado. Apéndice del recurso de Certiorari, pág. 4.

[3] Apéndice del recurso de Certiorari, pág. 4.
[4] Íd.

[5] Moción de Sentencia Sumaria presentada el 28 de abril de 1999. Apéndice del recurso de Certiorari, págs. 12-26.

[6] Íd., pág. 13.

acompañó copia de los cheques que expidió a nombre del demandante-lesionado en concepto de salarios durante los meses de enero y febrero de 1998; la póliza de seguro que le expidió el Fondo, así como copia de documentos que acreditan los servicios médicos que el Fondo brindó al demandante-lesionado. Por último, North West planteó que la doctrina de actos propios impide que el demandante-lesionado pueda alegar que Quez era su patrono, en vista de que reclamó y recibió los beneficios del Fondo bajo la cubierta de seguro patronal de North West.[8]

El 6 de mayo de 1999, el demandante-lesionado solicitó una prórroga de treinta (30) días para oponerse a la petición de sentencia sumaria. Subsiguientemente, presentó una segunda solicitud de prórroga, en la cual adujo que los argumentos planteados en la solicitud de sentencia sumaria eran de tal complejidad que requerirían realizar un descubrimiento de prueba. El Tribunal de Primera Instancia concedió la primera solicitud de término adicional, sin embargo, declaró no ha lugar la Segunda Moción de Prórroga.[9]

El demandante-lesionado, señor García Rivera, notificó al Tribunal de Primera Instancia el primer pliego de interrogatorio y una solicitud de producción de documentos.[10] El 22 de octubre de 1999, el demandante-lesionado solicitó al Tribunal de Primera Instancia la expedición de un <u>subpoena</u> <u>duces</u> <u>tecum</u> contra el Fondo, mediante el cual pretendía requerir toda la documentación sobre el "status" patronal de Quez y North West, a parte de todos los documentos concernientes con su accidente.[11] **Dicha solicitud se basó en que alegadamente funcionarios de la Oficina sobre Determinación de Status Patronal del Fondo indicaron que estaban impedidos de suministrar la información solicitada, por lo que era necesario un mandamiento judicial.**[12] El Tribunal de Primera Instancia, al declarar no ha lugar la referida petición, expresó lo siguiente:

---

[7] Véase la Moción de Sentencia Sumaria de North West, que cita a <u>Báez Vega v. E.L.A.</u>, 87 D.P.R. 67 (1963). Íd., pág. 14.

[8] Conforme a las disposiciones de la Ley Núm. 45 de 18 de abril de 1935, mejor conocida como la Ley del Sistema de Compensaciones por Accidentes del Trabajo. 11 L.P.R.A. sec. 1, <u>et seq.</u>

[9] Resolución de 25 de mayo de 1999. Apéndice del recurso de <u>Certiorari</u>, pág. 29.

[10] Moción Informativa de 7 de junio de 1999. Apéndice del recurso de <u>Certiorari</u>, pág. 30. Posteriormente, el demandante-lesionado solicitó que se redujera el término para la contestación del referido interrogatorio. Apéndice del recurso de <u>Certiorari</u>, pág. 31.

[11] Véase Moción Solicitando se Expida Citación Para Producir Documentos, Apéndice del recurso de <u>Certiorari</u>, págs. 39-40.

[12] Íd.

El obrero tiene derecho a que se le entregue copia de su expediente y debe ser notificado de cualquier determinación del FSE. Acuda el demandante al FSE y solicite el expediente.[13]

El 15 de noviembre de 1999, el demandante presentó una Moción de Reconsideración alegando que había confrontado dificultad para obtener el expediente que obraba en el Fondo. Solicitó, específicamente, la expedición de una citación para tomar una deposición a una funcionaria del Fondo, señora Petra González, a los efectos de obtener información necesaria para vincular o excluir la responsabilidad de cualquiera de las corporaciones codemandadas.[14] Además, le requirió a dicha funcionaria la producción de certificaciones acreditativas de las pólizas de seguro expedidas a favor de Quez y North West.[15] Posteriormente, mediante Resolución de 21 de diciembre de 1999, el Tribunal de Primera Instancia declaró no ha lugar la referida moción de reconsideración.

Inconforme con dicho dictamen, la parte demandante recurrió ante el Tribunal de Circuito de Apelaciones mediante un recurso de certiorari. En síntesis, sostuvo que es improcedente dictar sentencia sumariamente por la alegada existencia de controversia real y sustancial sobre hechos esenciales, razón por la cual es imprescindible la realización del referido descubrimiento de prueba.[16] Adujo que el descubrimiento de prueba debe ser amplio y liberal, a tenor con las Reglas de Procedimiento Civil. En apoyo a sus peticiones de descubrimiento de prueba, adujo que las pólizas de seguro expedidas a nombre de las demandadas-recurridas no constituyen materia privilegiada. Sostuvo, además, que dichos documentos no forman parte del expediente del obrero que obra en el Fondo. Alegó que toda documentación indicativa de que el demandante-lesionado era empleado de North West, no significa necesariamente que éste no fuera empleado de Quez. Por último, planteó que un tribunal puede denegar una solicitud de sentencia sumaria y ordenar la continuación de los procedimientos, si la parte promovida demuestra que necesita realizar descubrimiento de

---

[13] Resolución del Tribunal de Primera Instancia del 25 de octubre de 1999. Apéndice del recurso de Certiorari, pág. 41.

[14] Moción de Reconsideración y Solicitando se Expida Citación para Toma de Deposición al Fondo del Seguro del Estado. Apéndice del recurso de Certiorari, págs. 42-44.

[15] Íd., pág. 44.

[16] Según alega el demandante, aquí peticionario, él y las demandadas-recurridas colaboraron conjuntamente en un intercambio de documentos. De dicho intercambio, el aquí peticionario obtuvo información, en virtud de la cual planteó que a la fecha y hora del accidente, 4 de febrero de 1998, ninguna de las codemandadas estaba asegurada por el Fondo. También acordaron la toma de deposición al señor Enríquez Marín, demandado. Recurso de Certiorari, pág. 10.

prueba para obtener la evidencia necesaria para una adecuada oposición a la referida solicitud de sentencia sumaria.[17]

El Tribunal de Circuito de Apelaciones denegó la expedición del auto solicitado.[18] Fundamentó su determinación en que el demandante-lesionado tiene acceso a la prueba solicitada sin necesidad de una orden, y que corresponde a éste demostrar que no tiene acceso a los referidos documentos o que se le ha negado copia de éstos. Una vez demostrada cualquiera de las situaciones antes mencionadas, se justificaría la expedición de una orden para el descubrimiento de prueba, evitando postergar indebidamente los procedimientos.[19]

Inconforme con la determinación del Tribunal de Circuito de Apelaciones, el demandante recurre ante nos mediante el presente recurso de certiorari, señalando como único error cometido por dicho Tribunal, lo siguiente:

> Erró el Honorable [sic] Tribunal de Circuito de Apelaciones al denegar la expedición del auto solicitado, y confirmando [sic] la denegatoria a la solicitud de descubrimiento de prueba.

El 14 de abril de 2000 este Tribunal emitió una Resolución concediéndole un término de veinte (20) días a las demandadas-recurridas para que mostraran causa, si la hubiere, por la cual no debía ordenarse el descubrimiento de prueba solicitado contra el Fondo.

En síntesis, la codemandada-recurrida fundamentó su oposición al referido descubrimiento, basándose en que el Artículo 37 de la Ley del Sistema de Compensaciones por Accidentes del Trabajo[20] provee para que la parte interesada o su abogado puedan inspeccionar los informes y documentos relacionados con el caso que tiene ante el Fondo. Por otro lado, aduce que el demandante-lesionado no especificó las cuestiones que se proponía examinar al interrogar al funcionario del Fondo, lo cual es contrario a lo preceptuado en la Regla 27.5 de Procedimiento Civil.[21] Dicha regla establece que la parte que pretenda tomar una deposición a cualquier corporación pública o privada o a cualquier otra entidad, debe reseñar cuáles son las materias específicas que se propone examinar.[22]

Con el beneficio de ambas comparecencias, resolvemos.

---

[17] Recurso de Certiorari, pág. 9, en la que cita a Wright and Miller, Vol. 10B, Federal Practice and Procedure, § 2739, 3d Ed., West Group, 1998, pág. 395.

[18] Sentencia del Tribunal de Circuito de Apelaciones de 31 de enero de 2000. Apéndice del recurso de Certiorari, págs. 98-104.

[19] Íd., pág. 103.

[20] 11 L.P.R.A. sec. 38.

[21] 32 L.P.R.A. Ap. III, R. 27.5.

[22] Escrito de Mostración de Causa de la demandada-recurrida presentado el 8 de mayo de 2000.

II

Hoy día se reconoce que la información poseída por cada parte no es de su exclusiva propiedad, de modo que a través de los distintos mecanismos de descubrimiento de prueba pueda lograrse limitar las cuestiones a dilucidarse y circunscribir la presentación de evidencia durante el juicio a aquellas en controversia u obtener evidencia adicional, o información que sirva de pista para encontrarla.[23]

Antes del juicio, toda parte en un procedimiento judicial tiene derecho a obtener toda la información que esté en poder de cualquier persona y que resulte pertinente a la adjudicación de la controversia.

La finalidad del descubrimiento de prueba es precisar las cuestiones en controversia, se trata de un mecanismo auxiliar a las alegaciones que facilita la consecución de evidencia y la búsqueda de la verdad, evita las sorpresas en el juicio y perpetúa la prueba.[24]

De conformidad con la Regla 23.1 de Procedimiento Civil,[25] el descubrimiento de prueba tiene sólo dos limitaciones, estas son: (1) que no puede tratarse de materia privilegiada; y (2) debe ser materia pertinente al asunto en controversia. El término privilegiado se refiere exclusivamente a los privilegios que reconocen las reglas de evidencia.[26] Por tanto, en ausencia de un privilegio específico reconocido por nuestro ordenamiento jurídico, no procede objeción alguna a un descubrimiento de prueba bajo ese fundamento.

En relación con el criterio de pertinencia, hemos expresado que éste es mucho más amplio bajo la Regla 23.1 de las de Procedimiento Civil, supra, que bajo la Regla 18 de Evidencia,[27] que regula la admisión de evidencia en un proceso judicial.[28] De conformidad con lo anterior, se admite el descubrimiento de todos los asuntos que puedan tener cualquier relación posible con la materia que es objeto del litigio, aunque no estén relacionados con las controversias específicas que han sido esbozadas por las alegaciones.[29] Basta que exista una posibilidad razonable de relación con el asunto en controversia.[30]

---

[23] Ades v. Zalman, 115 D.P.R. 514, 517-518 (1984).

[24] R. Hernández Colón, Práctica Jurídica de Puerto Rico: Derecho Procesal Civil, San Juan, Michie of Puerto Rico, Inc., 1997, § 2802, pág. 220.

[25] 32 L.P.R.A. Ap. III, R. 23.1.

[26] Rivera Alejandro v. Algarín, 112 D.P.R. 830, 833 (1982).

[27] 32 L.P.R.A. Ap. II, R. 18.

[28] Ortiz Rivera v. E.L.A., National Ins. Co., 125 D.P.R. 65, 70 (1989); General Electric v. Concessionaires Inc., 118 D.P.R. 32, 40 (1986).

[29] Sierra v. Tribunal Superior, 81 D.P.R. 554, 573 (1959).

[30] Medina v. M.S. & D. Química P.R., Inc., 135 D.P.R. 716, 731 (1994); General Electric v. Concessionaires Inc., supra, pág. 40; Rodríguez v. Scotiabank de P.R., 113 D.P.R. 210, 212-213 (1982).

En virtud de lo anteriormente expuesto, el descubrimiento de prueba permite, inclusive, la entrega de materia que sería inadmisible en el juicio, si ésta conduce a prueba admisible.[31] Por tanto, no será objeción válida el que la información solicitada sea inadmisible en el juicio.[32] De ahí, que el concepto de pertinencia para los propósitos del descubrimiento de prueba se interprete de forma más amplia que el utilizado en las Reglas de Evidencia.[33]

Por otro lado, la solicitud de producción de documentos es uno de los mecanismos de descubrimiento de prueba regulado por la Regla 31 de Procedimiento Civil.[34] Este mecanismo permite que los documentos y objetos en posesión de una parte, y que sean pertinentes a la solución de una controversia, puedan estar disponibles a la otra parte de manera que se eliminen las sorpresas, se simplifiquen las cuestiones planteadas y se aligeren los procedimientos.[35] Esta regla debe ser interpretada liberalmente y exige la cooperación y buena fe de ambas partes en su implementación. Cuando una parte interesa que se produzcan documentos, fotografías, o cualquier objeto que está en poder de otra de las partes o sus agentes, con el propósito de examinarlos, copiarlos o fotografiarlos, debe requerirlo por escrito.[36] La solicitud de producción de documentos, debe identificar la documentación cuya inspección se solicita, señalándola concretamente.

Dicha solicitud procede exclusivamente en cuanto a la prueba que esté en posesión de las partes, y no respecto a la prueba que pueda estar en posesión de un tercero que no sea parte del litigio.[37] No obstante, existen dos (2) formas mediante las cuales el solicitante puede examinar los documentos o traerlos ante el tribunal, estas son: (1) notificar al tercero una citación para la toma de una deposición, y, obligarlo a que traiga consigo toda aquella evidencia que interesa examinar;[38] o, (2) citar al tercero para que traiga al juicio la evidencia.[39]

---

[31] Medina v. M.S. & D. Química P.R., Inc., supra, pág. 731; Rodríguez v. Scotiabank de P.R., supra, pág. 212.

[32] 32 L.P.R.A. Ap. III, R. 23.1.

[33] Rodríguez v. Scotiabank de Puerto Rico, supra, pág. 212.

[34] 32 L.P.R.A. Ap. III, R. 31.

[35] 4 Wright, Miller and Marcus, Federal Practice and Procedure, Civil 2d., sec. 2202, págs. 356, 357.
[36] R. Hernández Colón, op. cit., pág. 244.

[37] Véase, Regla 31 de Procedimiento Civil, 32 L.P.R.A. Ap. III, R. 31. Rafael Hernández Colón, op. cit., pág. 244; J.A. Cuevas Segarra, Tratado de Derecho Procesal Civil, (Editor Luiggi Abraham), San Juan, Publicaciones J.T.S., Tomo I, 2000, págs. 552-553.

[38] A tenor con las Reglas 31.1 de Procedimiento Civil, supra, y la Regla 40.4 de Procedimiento Civil 32 L.P.R.A. Ap. III, R. 40.4.

[39] R. Hernández Colón, op. cit., pág. 244 n.223.

Por último, debemos considerar la toma de deposición como otro de los métodos de descubrimiento de prueba, el cual está reglamentado por la Regla 27 de Procedimiento Civil.[40] La toma de deposición ha sido definida como aquella "declaración que precediendo juramento... se recibe al reo, o testigos u otro en alguna causa civil o negocio civil.[41] Se le llama deposición, ya que depone, asienta o afirma lo que ha llegado a su noticia, o sobre lo que se le pregunta.[42] La Regla 27.1 de Procedimiento Civil no contiene limitaciones sobre a quiénes se les puede tomar deposiciones, sólo expresa que se autoriza el examen a "cualquier persona",[43] ergo, no es requisito ser parte o haber sido anunciado como testigo.[44] Por otro lado, si la parte demandante interesa tomar una deposición dentro de los veinte (20) días siguientes a la fecha del emplazamiento de la parte demandada, es necesario el permiso del tribunal, salvo las dos excepciones que bien dispone la Regla 27.1 de Procedimiento Civil, supra, en sus incisos (a) y (b).

En el presente caso, la información solicitada por el demandante-lesionado está íntimamente relacionada con la alegación de falta de inmunidad patronal de North West al momento del accidente. Dicha póliza es específica al estipular que el término de su vigencia sería desde la una y diecisiete de la tarde (1:17 p.m.) del 4 de febrero de 1998, día del accidente, hasta el mediodía del 31 de marzo de 1998.[45] Sobre este particular, entendemos que existen razones válidas para cuestionar la cubierta de la referida póliza de seguro patronal al momento exacto del accidente ocupacional y auscultar toda información en relación con dicho accidente.

En el presente caso el demandante-lesionado solicitó, primeramente, la expedición de una citación para la producción de documentos por el Fondo. La información solicitada era sobre el status patronal de las codemandadas y sobre el accidente ocupacional que él sufrió. Concluimos que sobre ese particular no procede la producción de documentos, ya que el Fondo no es parte en el litigio.[46] No obstante, como señaláramos anteriormente, una de las alternativas para realizar la referida producción de documentos contra un tercero, es a través de la toma de deposición, en conjunto con una citación para que el deponente traiga consigo los documentos requeridos.[47] Precisamente, esa es la situación

---

[40] 32 L.P.R.A. Ap. III, R. 27.

[41] Ades v. Zalman, 115 D.P.R. 514, 517 (1984), citando a E. Pallares, Diccionario de Derecho Procesal Civil, 14 ed., México, Ed. Porrúa, 1981, pág. 234.

[42] Íd.

[43] J.A. Cuevas Segarra, op. cit., pág. 517.

[44] San Lorenzo Trad., Inc. v. Hernández, 114 D.P.R. 704, 708 n.2 (1983).

[45] Apéndice del recurso de Certiorari, pág. 23.

[46] Véase Regla 31.1 de Procedimiento Civil, supra.

ante nos. Posteriormente, el demandante-lesionado solicitó la expedición de una citación para la toma de deposición a la señora Petra González, funcionaria del Fondo. Mediante dicha citación, le requirió a dicha funcionaria la producción de los documentos acreditativos de las pólizas de seguro expedidas a nombre de las codemandadas. Es menester mencionar, que en el expediente del empleado-lesionado que obra en el Fondo no constan los documentos concernientes a la póliza de seguro del patrono. Por lo tanto, es imprescindible la realización de descubrimiento de prueba, mediante el cual el obrero-lesionado tenga la certeza de la existencia o ausencia de inmunidad patronal de las codemandadas-recurridas.

III

La sentencia sumaria es un mecanismo procesal discrecional y extraordinario. Su propósito es facilitar la solución justa, rápida y económica de los litigios civiles que no presenten controversias genuinas de hechos materiales, razón por la cual no ameritan la celebración de un juicio en su fondo.[48] Dicho mecanismo tiene como finalidad la concesión de un remedio rápido y eficaz en casos en que no existe una controversia sobre los hechos materiales del litigio.[49] De modo que, aligera la tramitación del caso, permitiendo que se dicte sentencia sin celebrar una vista en los méritos, cuando de los documentos no refutados surge que no existen controversias de hecho, sino que lo que resta es aplicar el derecho.[50] No obstante, el propósito de solución rápida está supeditado al principio de alcanzar una decisión justa.[51]

Se podrá dictar sentencia sumaria si de las alegaciones, deposiciones, contestaciones a interrogatorios y admisiones ofrecidas, en unión a las declaraciones juradas, si las hubiere, surge que no hay controversia real sustancial en cuanto a ningún hecho material, y como cuestión de derecho debe dictarse sentencia a favor de la parte promovente.[52]

Procede dictar sentencia sumaria cuando el promovente ha establecido su derecho con claridad y ha quedado demostrado que la parte promovida no tiene derecho alguno bajo cualquier circunstancia discernible de las alegaciones que no hayan sido refutadas[53]. La

---

[47] 32 L.P.R.A. Ap. III, R. 40.4.

[48] Pilot Life Ins. Co. v. Crespo Martínez, 136 D.P.R. 624, 632 (1994).

[49] PFZ Props., Inc. v. Gen. Acc. Ins. Co., 136 D.P.R. 881, 911-912 (1994); Revlon v. Las Américas Trust Co., 135 D.P.R. 363, 376 (1994).

[50] PFZ Props., Inc. v. Gen. Acc. Ins. Co., supra, pág. 912; Caquías v. Asoc. Res. Mansiones de Río Piedras, 134 D.P.R. 181, 216 (1993); Consejo Tit. C. Parkside v. MGIC Fin. Corp., 128 D.P.R. 538, 548 (1991); Cuadrado Lugo v. Santiago Rodríguez, 126 D.P.R. 272, 279 (1990); Corp. Presiding Bishop CJC of LDS v. Purcell, supra, pág. 720.

[51] Cuadrado Lugo v. Santiago Rodríguez, supra, pág. 279.

[52] Regla 36.3 de las de Procedimiento Civil, 32 L.P.R.A. Ap. III, R. 36.3.

[53] Corp. Presiding Bishop CJC of LDS v. Purcell, 117 D.P.R. 714, 720 (1986).

parte promovida deberá presentar declaraciones juradas y documentos que pongan en controversia los hechos presentados por el promovente.[54] No obstante, el hecho de que no se presente prueba que contravierta la presentada por el promovente no significa necesariamente que procede la sentencia sumaria.[55] Cuando no existe una clara certeza sobre todos los hechos de la controversia, no procede una sentencia sumaria.[56] En caso de duda sobre la existencia de controversia sobre hechos, se debe resolver en contra de quien presentó la sentencia sumaria. La sentencia sumaria no permite que el tribunal dirima cuestiones de credibilidad.[57]

El sabio discernimiento es el principio rector para el uso de la sentencia sumaria, pues mal utilizada puede prestarse para despojar a un litigante de su "día en corte", principio elemental del debido procedimiento de ley.[58] El Tribunal de Primera Instancia debe cerciorarse de la total inexistencia de controversia fáctica y que sólo reste aplicar el derecho.[59]

En atención a la presente controversia, es de particular importancia lo preceptuado por la Regla 36.6 de Procedimiento Civil. Dicha regla lee como sigue:

> Si de las declaraciones juradas de la parte que se oponga a la moción resulta que ésta no puede, por las razones allí expuestas, **presentar mediante declaraciones juradas hechos esenciales para justificar su oposición**, **el tribunal podrá denegar la solicitud de sentencia**, o podrá ordenar la suspensión de cualquier vista para que la parte pueda obtener declaraciones juradas o tomar deposiciones, o conseguir que la otra parte le facilite cierta evidencia, o podrá dictar cualquier otra orden que sea justa. (Énfasis nuestro.)

Ciertamente, nuestro ordenamiento jurídico contempla la situación en que el promovido por una moción de sentencia sumaria no ha tenido una adecuada oportunidad de conseguir prueba para apoyar alguno de los hechos esenciales que justifican su oposición. Frente a la situación antes descrita, la Regla 36.6 de Procedimiento Civil, supra, provee al Tribunal

---

[54] PFZ Props., Inc. v. Gen. Acc. Ins. Co., supra, pág. 913; Corp. Presiding Bishop CJC of LDS v. Purcell, supra, pág. 721.

[55] Consejo Tit. C. Parkside v. MGIC Fin. Corp., supra, pág. 549.

[56] Soc. de Gananciales v. Soc. de Gananciales, res. el 27 de enero de 2000, 2000 TSPR 14, 150 D.P.R. ___ (2000), 2000 J.T.S. 26; Metrop. de Préstamos v. López de Victoria, res. el 1ro. de noviembre de 1996, 1996 TSPR 156, 141 D.P.R. ___ (1996), 96 J.T.S. 138.

[57] Col. Ing. Agrim. P.R. v. A.A.A., 131 D.P.R. 735, 781-782 (1992).

[58] Roig Com. Bank v. Rosario Cirino, 126 D.P.R. 613, 617-618 (1990).

[59] Íd., pág. 618.

de Primera Instancia un mecanismo para remediar esa situación.[60] En virtud de lo anterior, confrontado el tribunal con una solicitud de sentencia sumaria prematura, éste puede, en el ejercicio de su discreción, posponer la evaluación de la moción o denegarla en esa etapa de los procedimientos, amén de que el propósito de las reglas de procedimiento es viabilizar el que los tribunales hagan justicia al resolver las controversias.[61] No obstante, el Tribunal de Primera Instancia debe tomar aquellas medidas que garanticen que no se recurra a la Regla 36.6, supra, como un ardid para demorar la solución final del asunto. Razón por la cual, es necesario que las razones que aduzca la promovida en apoyo de su contención sean razonables y adecuadas.[62] Comenta Cuevas Segarra que "[t]odo se reduce a fijar límites de razonabilidad a las actuaciones de la parte que se opone a que se dicte sentencia sumaria", e indica que el factor de probabilidad de que la parte promovente prevalezca, no puede considerarse en esta etapa de los procedimientos.[63]

Sobre este particular, en la obra de Wright and Miller hallamos el siguiente comentario:

Thus Rule 56(e) [nuestra Regla 36.5 de Procedimiento Civil] must be read in conjunction with the provision in Rule 56(f) [nuestra Regla 36.6 de Procedimiento Civil] that the court may deny summary judgment and order a continuance when the opposing party shows why he cannot present facts necessary

---

[60] Pérez v. El Vocero de P.R., res. el 11 de octubre de 1999, 99 TSPR 154, 149 D.P.R. ___ (1999), 99 J.T.S. 160, pág. 268. Ante la situación prevista por la Regla 36.6 de Procedimiento Civil, supra, según Cuevas Segarra, varias de las alternativas que podría adoptar el tribunal son: "1. puede denegar la solicitud de sentencia sumaria y ordenar que el caso se vea en sus méritos mediante juicio plenario; 2. puede denegar la moción con la condición de que la parte promovida esté lista para cuando el caso sea señalado para juicio; 3. puede denegar la moción sin perjuicio de que se reproduzca una vez se notifique la contestación; 4. puede denegar la moción hasta que la parte promovida haya tenido una oportunidad razonable de obtener declaraciones juradas, tomar deposiciones o valerse de los métodos de descubrimiento de prueba; 5. puede posponer su consideración hasta la conferencia final con antelación al juicio; 6. o puede dictar cualquier otra orden que fuere justa. Hay que tener presente que el propósito de las reglas procesales es viabilizar que los tribunales hagan justicia al resolver las controversias." (Citas omitidas.) J.A. Cuevas Segarra, op. cit., págs. 617-618.

[61] Pérez v. El Vocero de P.R., supra, págs. 268-269.

[62] Íd.

[63] J.L. Cuevas Segarra, op. cit., pág. 617, citando los siguientes casos: A.C.P., Inc. v. T.C.P. Inc., 96 D.P.R. 264, 268-269 (1968); RTC v. North

to justify opposition so as to allow time to pursue discovery and obtain the evidence required under Rule 56(e).

En el caso ante nos, el demandante-lesionado argumentó que la solicitud de sentencia sumaria de North West fue presentada prematuramente. Planteó, además, la necesidad de realizar un adecuado descubrimiento de prueba, a los efectos de contar con prueba suficiente para presentar la oposición a la referida solicitud de sentencia sumaria. Ante el planteamiento de inmunidad patronal de North West, el cual fue cuestionado por el demandante-lesionado, es necesario brindarle la oportunidad a éste para que obtenga la información sobre la cubierta de seguro patronal de las codemandadas.

El demandante-lesionado consistentemente ha alegado que la documentación requerida no consta en su expediente en el Fondo, y que el examen de estos documentos le ha sido negado por los funcionarios de dicha entidad pública. La información solicitada gira en torno a una controversia fáctica real, si North West gozaba de inmunidad patronal al momento del accidente ocupacional que sufrió el demandante-lesionado. Dicha consideración fáctica es crucial para la adjudicación final de la solicitud de sentencia sumaria. En virtud de lo anterior, entendemos que es procedente tanto la toma de deposición como la solicitud de producción de documentos a la funcionaria del Fondo del Seguro del Estado.

IV

Por los fundamentos antes expuestos, procede expedir el auto solicitado, revocar la sentencia emitida por el Tribunal de Circuito de Apelaciones y devolver el caso al Tribunal de Primera Instancia para la continuación de los procedimientos, de forma consistente con lo aquí resuelto.

Se dictará sentencia revocatoria.

EFRAÍN E. RIVERA PÉREZ
Juez Asociado

Bridge Assoc., 22 F.3d 1198, 1203 (1994) y Paddington Partners v. Bouchard, 34 F.3d 1132, 1138 (1994).

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Israel García Rivera,
Madeline Vélez Rivera, y
Otros

 Demandantes-Peticionarios

      v.

José R. Enríquez Marín,
Fulana de Tal, y otros

 Demandados-Recurridos

CC-2000-216      Certiorari

SENTENCIA

San Juan, Puerto Rico, a 2 de febrero de 2001.

Por los fundamentos expuestos en la Opinión que antecede, la cual se hace formar parte íntegra de la presente, se expide el auto solicitado y se revoca la sentencia emitida por el Tribunal de Circuito de Apelaciones en el presente caso. Se devuelve el caso al Tribunal de Primera Instancia para la continuación de los procedimientos, de forma consistente con lo aquí resuelto.

Lo acordó el Tribunal y certifica la Secretaria del Tribunal Supremo. El Juez Presidente señor Andréu García y el Juez Asociado señor Fuster Berlingeri concurren sin opinión escrita. El Juez Asociado señor Corrada del Río no interviene.

Isabel Llompart Zeno
Secretaria del Tribunal Supremo