ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL VI

| ERIC RODRÍGUEZ CRUZ<br><br>RECURRIDO<br><br>v.<br><br>CARIBBEAN RESTAURANTS, LLC<br><br>PETICIONARIO | KLCE202400898 | *Certiorari* procedente del Tribunal de Primera Instancia, Sala Superior de Aguada<br><br>Caso Número: AU2022CV00086<br><br>Sobre: Despido injustificado |
|---|---|---|

Panel integrado por su presidenta, la Jueza Ortiz Flores, la Jueza Aldebol Mora y la Jueza Boria Vizcarrondo

Ortiz Flores, Jueza Ponente

**RESOLUCIÓN**

En San Juan, Puerto Rico, a 27 de septiembre de 2024.

Comparece la corporación Caribbean Restaurants, LLC (Caribbean Restaurants; peticionaria) y nos solicita que revoquemos la *Resolución* emitida el 17 de julio de 2024 y notificada al día siguiente 18 de julio de 2024, por el Tribunal de Primera Instancia, Sala Superior de Aguada (TPI). La peticionaria solicita, la desestimación sumaria de la reclamación sobre despido injustificado y discrimen por razón de edad presentada por el señor Eric Rodríguez Cruz (Sr. Rodríguez Cruz; recurrido). En la mencionada decisión interlocutoria, el TPI declaró No Ha Lugar la moción de sentencia sumaria presentada por la peticionaria.

Por las razones que expondremos a continuación, y en el ejercicio de nuestra discreción, denegamos expedir el auto de *certiorari* solicitado.

**I**

El Sr. Rodríguez Cruz fue despedido el 10 de febrero de 2022 mientras se desempeñaba como gerente de servicio del restaurante Burger King localizado en el Municipio de Moca.[1] Dicha decisión fue tomada por su patrono luego de recibir quejas de dos empleadas que trabajaban con el recurrido, las cuales alegaron hostigamiento sexual de parte de este. Las

---

[1] Apéndice del recurso (Apéndice), *Resolución* de 17 de julio de 2024, notificada el 18 de julio de 2024, pág. 833; SUMAC AU2022CV00086 (SUMAC), Entrada 67.

alegaciones giraron en torno a que el recurrido frecuentemente hacía comentarios hacia las empleadas de índole sexual y referentes a su aspecto físico. A raíz de lo ocurrido, durante el 8 de febrero de 2022, el Departamento de Recursos Humanos de la compañía realizó una investigación. El resultado de dicha investigación fue concluir que el Sr. Rodríguez Cruz había incurrido en hostigamiento sexual según definido en la política de la compañía y el Manual de Empleado, por lo que el recurrido violentó el mismo y ello constituía justa causa para la separación permanente de su empleo. Al ser notificado de su despido, el Sr. Rodríguez Cruz no estuvo de acuerdo con dicha decisión y así lo hizo constar en el Registro de Orientación de Asociados.[2]

Luego del despido, el 18 de febrero de 2022, el Sr. Rodríguez Cruz presentó una *Demanda* ante el TPI contra Caribbean Restaurants donde alegó despido injustificado.[3] Luego, mediante una enmienda, añadió la causa de acción de discrimen por razón de edad al este ser mayor de 60 años y la persona que lo reemplazó en su puesto es mucho menor que el recurrido.[4] Una vez contestada la *Demanda Enmendada*,[5] Caribbean Restaurants presentó ante el TPI una moción para que se dictara sentencia sumaria.[6] En su moción, la peticionaria solicitó al foro primario que desestimara sumariamente la reclamación por despido injustificado y discrimen por razón de edad presentada por el Sr. Rodríguez Cruz.[7] Luego de celebrada una vista sobre estado de los procedimientos,[8] el TPI emitió su decisión donde declaró No Ha Lugar la moción presentada. En esta realizó las siguientes determinaciones de hechos que no están en controversia:

---

[2] Apéndice, *Solicitud de Sentencia Sumaria* de 11 de abril de 2024, pág. 122; SUMAC, Entrada 54.
[3] Apéndice, *Demanda* de 18 de febrero de 2022, págs. 1-2; SUMAC, Entrada 1.
[4] Apéndice, *Demanda Enmendada* de 5 de agosto de 2022, págs. 8-10; SUMAC, Entrada 20.
[5] Apéndice, *Contestación a Demanda Enmendada* de 24 de agosto de 2022, págs. 12-17; SUMAC, Entrada 22.
[6] Apéndice, *Solicitud de Sentencia Sumaria* de 11 de abril de 2024, págs. 18-309; SUMAC, Entrada 54.
[7] Apéndice, *Solicitud de Sentencia Sumaria* de 11 de abril de 2024, pág. 31; SUMAC, Entrada 54.
[8] Apéndice, *Minuta* de 11 de junio de 2024, págs. 828-831; SUMAC, Entrada 66.

1. El 29 de agosto de 1982 el señor Eric A. Rodríguez Cruz comenzó como empleado de Caribbean Restaurants hasta su despido para el 10 de febrero de 2022.

2. El puesto del señor Eric A. Rodríguez Cruz al ser despedido era el de gerente del restaurante de Burger King ubicado en Moca.

3. El señor Eric A. Rodríguez Cruz conocía que debía cumplir con todas las normas y reglamentos de Caribbean Restaurants.

4. El señor Eric A. Rodríguez Cruz, mientras laboró con Caribbean Restaurants, recibió el Manual de Empleados; el cual contiene las normas y políticas de la empresa.

5. Al recibir el Manual de Empleados, el señor Eric A. Rodríguez Cruz firmó un acuse de recibo mediante el cual hizo constar que leyó, entendió y se comprometió a cumplir con el mismo.

6. El Manual de Empleados de Caribbean Restaurants dispone que existir una violación a las normas de su empresa "la compañía podrá tomar medidas disciplinarias que crea pertinentes, lo que puede conllevar hasta el despido".

7. El señor Eric A. Rodríguez Cruz ocupó distintas posiciones en Caribbean Restaurants siendo la última gerente en propiedad.

8. El señor Eric A. Rodríguez Cruz ocupó la posición de gerente por aproximadamente por 17 años.

9. Para el año 2019, el señor Eric A. Rodríguez Cruz comenzó a ocupar la posición de gerente en propiedad en el restaurante Burger King de Moca, hasta su eventual despido para el 10 de febrero de 2022.

10. El señor Eric A. Rodríguez Cruz, como parte de sus funciones, podía ser trasladado de restaurante para atender las necesidades de la empresa; esto, según su experiencia, puesto y conocimiento.

11. El señor Eric A. Rodríguez Cruz, como parte de sus funciones tenía la responsabilidad de velar el cumplimiento y amonestar a los empleados del restaurante que violaran las normas y políticas de la empresa.

12. El señor Eric A. Rodríguez Cruz tenía conocimiento y recibió copia sobre la política de Caribbean Restaurants que prohíbe el discrimen y el hostigamiento sexual en el empleo.

13. Caribbean Restaurants le ofreció al señor Eric A. Rodríguez Cruz, dos veces en el año, seminarios y orientaciones sobre la política de discrimen y hostigamiento sexual en el empleo.

14. Caribbean Restaurants tiene como norma prohibir "observar un comportamiento lascivo, inmoral o indecente en las facilidades de la Compañía".

15. Caribbean Restaurants también tiene como norma prohibir "discriminar, hostigar o acosar sexualmente a un asociado, invitado o suplidor".

16. La política de Caribbean Restaurants en cuanto al hostigamiento sexual, indica lo siguiente:

Hostigamiento Sexual: implica cualquier avance sexual no deseado, solicitudes de favores sexuales o conducta o comentario de naturaleza sexual. Algunos ejemplos de la conducta que se considerará hostigamiento sexual:

Proposiciones sexuales no deseadas. Esto incluye, pero no se limita, al contacto físico de carácter sexual que otra persona considera inaceptable. Solicitudes o demandas de favores sexuales. Esto incluye una solicitud sutil de favores o expectativas obvias, presiones o solicitudes de cualquier tipo de favor sexual acompañadas por una promesa implícita o directa, o trato preferencial o consecuencia negativa con relación a condiciones de empleo.

Hacer uso de lenguaje abusivo ya sea verbalmente, por escrito o por mecanismo electrónico, o hacer bromas con contenido sexual, y que otra persona considera inaceptable. Esto incluye comentar sobre el cuerpo o la apariencia de una persona cuando dichos comentarios van más allá de una mera cortesía; hacer chistes de mal gusto que son claramente no deseados y que otros consideran ofensivos; o cualquier otro comentario, insinuación o acción de carácter ofensivo o sexual que pueda insultar a otros.

Llevar a cabo algún tipo de conducta sexual no deseada que interfiera irrazonablemente con el desempeño de las labores de otro. Una interferencia irrazonable es aquella que ocasiona una reducción en la productividad de la persona o en el tiempo disponible en tareas que le corresponden.

Crear un ambiente de trabajo que es intimidante, hostil u ofensivo debido a las conversaciones, sugestiones, solicitudes, demandas, contactos físicos, atenciones o piropos repetidos de carácter sexual y que no son deseados.

Las interacciones normales, corteses y placenteras entre los asociados, que son bienvenidas para ambas partes, no se consideran hostigamiento sexual.

18. Caribbean Restaurants prohíbe el hostigamiento sexual en el empleo. A tales efectos, su Manual de Empleado dispone lo siguiente:[9]

> Caribbean Restaurants, LLC se compromete a mantener un lugar de trabajo donde los asociados estén libres de perturbación y el malestar que pueda crear el hostigamiento sexual o de otra naturaleza ilegal. Tod[a] proposición repetida o no deseada de carácter verbal o sexual, comentario degradante explícitamente sexual o insinuación sexual [ ] hecha por alguien en el trabajo, que es ofensiva u objetable para el (la) que lo recibe, está absolutamente prohibida. Igualmente, queda totalmente prohibido otros tipos de hostigamiento (ver inciso 3.4), maltratos o abusos de cualquiera otra naturaleza, incluyendo, pero sin limitarse, a aquellos basados en el embarazo, orientación sexual, raza, color, edad, ideas religiosas, origen social o nacional, condición social, impedimento físico o mental, ideas políticas, matrimonio del asociado con otro asociado de la Compañía, servicio militar o por ser veterano de las fuerzas armadas de los Estados Unidos de América o de la Guardia Nacional (en adelante colectivamente designado como "hostigamiento de otra naturaleza"). Esta norma también aplica a la conducta que deben desplegar nuestros asociados en su trato con invitados y suplidores en el curso de su empleo.

19. El Manual del Empleado de Caribbean Restaurants dispone que el empleado que incurra en hostigamiento sexual podrá ser despedido de su empleo.

20. Caribbean Restaurants contrató a la señora Coralis del Mar Feliciano Pérez para el puesto de asociada general a tiempo parcial en el restaurante de Moca.

21. El señor Eric A. Rodríguez Cruz era el supervisor directo de la señora Coralis del Mar Feliciano Pérez.

22. El 4 de febrero de 2022, la señora Coralis del Mar Feliciano Pérez les informó a los asistentes de gerente, la señora Genevie Arroyo y el señor Heriberto Torres, sobre un incidente que tuvo con el señor Eric A. Rodríguez Cruz Rodríguez y cómo esa situación le hizo sentir. Dicho incidente ocurrió el 2 de febrero de 2022 según se desprende de un video de seguridad.

23. La señora Genevie Arroyo le solicitó a la señora Coralis del Mar Feliciano Pérez que redactara una carta resumiendo el incidente para notificarlo al Departamento de Recursos Humanos.

24. La gerente de área, la señora Sheily Delgado, le comunicó al Vicepresidente de Recursos Humanos, el señor Manuel Marrero Miranda, el incidente que la señora Coralis del Mar Feliciano Pérez le notificó a la asistente de gerente, la señora Genevie Arroyo.

---

[9] La enumeración en el original, omite el inciso 17, y continúa del 16 al 18.

25. El 7 de febrero de 2022, el señor Manuel Marrero Miranda instruyó al representante de Recursos Humano[s], señor Osvaldo Rivera, a realizar una investigación interna sobre el incidente que la señora Coralis del Mar Feliciano Pérez le notificó a la asistente de gerente, la señora Genevie Arroyo.

26. El 8 de febrero de 2022, el señor Manuel Marrero Miranda efectuó una investigación interna en la cual entrevistó alrededor de quince asociados del restaurante de Moca.

27. El 10 de febrero de 2022, el señor Eric A. Rodríguez Cruz Rodríguez fue despedido de su empleo.[10]

No obstante, **el TPI halló controversia sobre los hechos referentes a las alegaciones de hostigamiento sexual realizadas contra el Sr. Rodríguez Cruz, la investigación que realizó Caribbean Restaurants a raíz de las alegaciones y así como las circunstancias y motivaciones del despido del Sr. Rodríguez Cruz.**[11]

Inconformes con la decisión del foro primario, Caribbean Restaurants acudió ante nosotros mediante el recurso de epígrafe donde expone los siguientes señalamientos de error:

PRIMERO: EL TPI ERRÓ AL NO DESESTIMAR SUMARIAMENTE LA DEMANDA ENMENDADA ANTE LAS ADMISIONES DEL RECURRIDO Y LA EVIDENCIA QUE DEMUESTRA JUSTA CAUSA PARA EL DESPIDO Y LA INEXISTENCIA DE DISCRIMEN POR RAZÓN DE EDAD.

SEGUNDO: EL TPI ERRÓ AL NO INCLUIR EN LAS DETERMINACIONES DE HECHOS TODOS LOS HECHOS PROPUESTOS POR LA PETICIONARIA QUE ADMITIÓ EL RECURRIDO Y CONSIGNAR CONTROVERSIAS DE HECHO.

Una vez presentado el recurso de epígrafe ante este foro intermedio el 16 de agosto de 2024, emitimos una *Resolución* donde concedimos a la parte recurrida hasta el 3 de septiembre para someter su posición sobre este. El recurrido compareció oportunamente mediante el escrito titulado *Memorando en Oposición a Expedición del Auto de Certiorari*, por lo que el recurso quedó perfeccionado y nos hallamos en posición de resolver.

---

[10] Apéndice, *Resolución* de 17 de julio de 2024, notificada el 18 de julio de 2024, págs. 833-836; SUMAC Entrada 67.

[11] Apéndice, *Resolución* de 17 de julio de 2024, notificada el 18 de julio de 2024, pág. 839; SUMAC Entrada 67.

## II

### A.

El auto de *certiorari* es el vehículo procesal extraordinario "que permite a un tribunal de mayor jerarquía revisar las determinaciones de un tribunal inferior." *IG Builders et al. v. BBVAPR*, 185 DPR 307, 337-338 (2012), que cita a *Pueblo v. Díaz de León*, 176 DPR 913, 917 (2009); *García v. Padró*, 165 DPR 324, 334 (2005). Se trata de un recurso discrecional, para el cual existen unos parámetros que sirven de guía al momento de decidir si debemos expedir o denegar el auto. *IG Builders et al. v. BBVAPR, supra*. De esta forma, el asunto que se nos plantee en el recurso de *certiorari* debe tener cabida dentro de alguna de las materias reconocidas en la Regla 52.1 de Procedimiento Civil, 32 LPRA Ap. V, R. 52.1.

Particularmente, en cuanto a los procedimientos de apelación, *certiorari,* u otros procesos para revisar sentencias y resoluciones, la Regla 52.1 dispone lo siguiente:

> El recurso de *certiorari* para revisar resoluciones u órdenes interlocutorias dictadas por el Tribunal de Primera Instancia, solamente será expedido por el Tribunal de Apelaciones cuando se recurra de una resolución u orden bajo las Reglas 56 y 57 o de la denegatoria de una moción de carácter dispositivo. No obstante, y por excepción a lo dispuesto anteriormente, el Tribunal de Apelaciones podrá revisar órdenes o resoluciones interlocutorias dictadas por el Tribunal de Primera Instancia cuando se recurra de decisiones sobre la admisibilidad de testigos de hechos o peritos esenciales, asuntos relativos a privilegios evidenciaros, anotaciones de rebeldía, en casos de relaciones de familia, en casos que revistan interés público o en cualquier otra situación en la cual esperar a la apelación constituiría un fracaso irremediable de la justicia. Al denegar la expedición de un recurso de *certiorari* en estos casos, el Tribunal de Apelaciones no tiene que fundamentar su decisión. […]

De acuerdo con la anterior disposición legal y la jurisprudencia interpretativa, nos corresponde realizar un análisis dual para determinar si se expide o no un auto de *certiorari*. Este examen consta de una parte objetiva y otra parte subjetiva. Por ello, en primer lugar, tenemos que analizar si la materia contenida en el recurso de *certiorari* tiene cabida dentro de una de las materias específicas establecidas en la Regla 52.1,

toda vez que esta enumera taxativamente bajo qué materias, solamente, se podrá expedir el auto de *certiorari*. En aquellos en los que la materia no esté comprendida dentro de la regla, el tribunal revisor debe negarse a expedir el auto de *certiorari* automáticamente.

Superada esta etapa, corresponde analizar si bajo la discreción concedida a este tribunal revisor mediante la Regla 40 del Reglamento del Tribunal de Apelaciones, debemos o no expedir el auto de *certiorari*. 4 LPRA Ap. XXII-B, R. 40. A esos fines, la Regla 40 establece los criterios que debemos tomar en consideración para determinar si expedimos o no un auto de *certiorari*, como sigue:

A. Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.
B. Si la situación de hechos planteada es la más indicada para el análisis del problema.
C. Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.
D. Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.
E. Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.
F. Si la expedición del auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.
G. Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia.

**B.**

En nuestro ordenamiento jurídico el mecanismo de sentencia sumaria se rige por la Regla 36 de Procedimiento Civil de 2009, 32 LPRA Ap. V, R. 36, en síntesis dispone que para poder adjudicar en los méritos una moción de sentencia sumaria lo que se requiere es que se presente "una moción fundada en declaraciones juradas o en aquella evidencia que demuestre la inexistencia de una controversia sustancial de hechos esenciales y pertinentes, para que el tribunal dicte sentencia sumariamente" ya sea sobre la totalidad de la reclamación o parte de esta.

Quien promueve la sentencia sumaria "debe demostrar que no existe controversia sustancial o real en cuanto a algún hecho material, es

decir, en cuanto a ningún componente de la causa de acción". *Meléndez González v. M. Cuebas*, 193 DPR 100, 110 (2015). Un hecho material "es aquel que puede afectar el resultado de la reclamación de acuerdo con el derecho sustantivo aplicable". J.A. Cuevas Segarra, *Tratado de Derecho Procesal Civil*, San Juan, Pubs. J.T.S., 2000, T. I, pág. 609. Por otra parte, quien se opone a una sentencia sumaria debe presentar contradocumentos y contradeclaraciones que contradigan los hechos incontrovertidos por parte del promovente. *Rivera et al. v. Superior Pkg., Inc. et al.*, 132 DPR 115, 133 (1992). Por lo cual viene obligada a contestar de forma detallada la solicitud de sentencia sumaria.

El mecanismo procesal de la sentencia sumaria es un remedio de carácter extraordinario y discrecional. *Sucn. Maldonado v. Sucn. Maldonado*, 166 DPR 154, 184 (2005). El cual tiene como finalidad "propiciar la solución justa, rápida y económica de litigios civiles que no contengan controversias genuinas de hechos materiales". *Const. José Carro v. Mun. Dorado*, 186 DPR 113, 128 (2012). **Sin embargo, hay que aclarar que aligerar la tramitación de un caso no puede soslayar el principio fundamental de alcanzar una solución justa.** (Énfasis nuestro.) *García Rivera et al. v. Enríquez*, 153 DPR 323, 337-338 (2001); *Cuadrado Lugo v. Santiago Rodríguez,* 126 DPR 272, 279 (1990). Por ser la sentencia sumaria un remedio de carácter discrecional, "[e]l sabio discernimiento es el principio rector para su uso porque, mal utilizada, puede prestarse para despojar a un litigante de 'su día en corte', principio elemental del debido proceso de ley". (Citas omitidas.) *Mgmt. Adm. Servs. Corp. v. E.L.A.,* 152 DPR 599, 611 (2000).

Siendo esto así, solo procede que se dicte la sentencia sumaria "cuando surge de manera clara que, ante los hechos materiales no controvertidos, el promovido no puede prevalecer ante el derecho aplicable y el Tribunal cuenta con la verdad de todos los hechos necesarios para poder resolver la controversia". *Meléndez González v. M. Cuebas*, *supra*, págs. 109-110 que cita a *Const. José Carro v. Mun. Dorado*, *supra*. **De**

**haber alguna duda acerca de la existencia de una controversia sobre los hechos medulares y sustanciales del caso deberá resolverse contra la parte que solicita la moción, haciendo necesaria la celebración de un juicio**. (Énfasis nuestro.) *Rivera et al. v. Superior Pkg., Inc. et al.*, *supra*.

Se ha pautado que "[l]os jueces no están constreñidos por los hechos o documentos evidenciarios que se aduzcan en la solicitud de sentencia sumaria" y que "[d]eben considerar todos los documentos en autos, sean o no parte de la solicitud, de los cuales surjan admisiones que hagan las partes". *Vera v. Dr. Bravo*, 161 DPR 308, 333 (2004). **Sin embargo, ante un proceso de sentencia sumaria el tribunal está impedido de dirimir cuestiones de credibilidad.** (Énfasis nuestro.) *Id.*

Según se ha establecido jurisprudencialmente el tribunal apelativo se encuentra en la misma posición que el tribunal de primera instancia al determinar si procede una sentencia sumaria. Sin embargo, al revisar la determinación de primera instancia, el tribunal de apelación está limitado de dos maneras:

1. s[o]lo puede considerar los documentos que se presentaron ante el foro de primera instancia; y

2. el tribunal apelativo s[o]lo puede determinar si existe o no alguna controversia genuina de hechos materiales y esenciales, y si el derecho se aplicó de forma correcta. No puede adjudicar los hechos materiales esenciales en disputa. *Vera v. Dr. Bravo*, *supra*, págs. 334-335.

El deber de adjudicar hechos materiales y esenciales es una tarea que le compete al Tribunal de Primera Instancia y no al foro revisor debido a que está impedido de hacerlo. Por consiguiente, el Tribunal Supremo de Puerto Rico en *Meléndez González et al. v. M. Cuebas*, *supra*, estableció el estándar que debemos utilizar como tribunal revisor al momento de evaluar determinaciones del foro primario en las que se conceden o deniegan mociones de sentencia sumaria. En lo pertinente, dispuso que "[l]a revisión del Tribunal de Apelaciones es una *de novo* y debe examinar el expediente de la manera más favorable a favor de la parte que se opuso a la Moción de Sentencia Sumaria en el foro primario". (Énfasis nuestro.)

*Id.* pág. 118. Además, reiteró que por estar en la misma posición que el foro primario, debemos revisar que tanto la moción de sentencia sumaria como su oposición cumplan con los requisitos de forma expuestos en la Regla 36 de Procedimiento Civil. *Id.*

Luego que culminemos nuestra revisión del expediente, de encontrar que en realidad existen hechos materiales y esenciales en controversia, debemos tener en cuenta que el foro apelativo intermedio tiene que cumplir con la exigencia de la Regla 36.4 de Procedimiento Civil, *supra*, y debe exponer concretamente cuáles hechos materiales encontró que están controvertidos y cuáles están incontrovertidos, es decir, cuales no están en controversia. En lo pertinente, establece lo siguiente:

> Si en virtud de una moción presentada bajo las disposiciones de esta regla no se dicta sentencia sobre la totalidad del pleito […] y es necesario celebrar juicio, será obligatorio que el tribunal resuelva la moción mediante una determinación de los hechos esenciales y pertinentes sobre los cuales no hay controversia sustancial y los hechos esenciales y pertinentes que están realmente y de buena fe controvertidos […]. 32 LPRA Ap. V, R. 36.4.

Esta determinación puede hacerse en la Sentencia que disponga del caso y puede hacer referencia al listado de hechos incontrovertidos que emitió el foro primario en su Sentencia. *Id.* Por el contrario, de resultar que los hechos materiales y esenciales realmente están incontrovertidos, entonces nos corresponde revisar *de novo* si el TPI aplicó correctamente el derecho a los hechos incontrovertidos. *Meléndez González et al. v. M. Cuebas*, *supra,* pág. 119. A su vez, la Regla 36.3 de Procedimiento Civil, *supra*, dispone lo siguiente:

> La sentencia solicitada será dictada inmediatamente si las alegaciones, deposiciones, contestaciones a interrogatorios y admisiones ofrecidas, en unión a las declaraciones juradas si las hay, surja que no hay, u otra evidencia demuestran que no hay controversia real sustancial en cuanto a algún hecho esencial y pertinente y que como cuestión de derecho el tribunal debe dictar sentencia sumaria a favor de la parte promovente.

**La sentencia sumaria solo debe dictarse en casos claros. Por tanto, cuando no existe una clara certeza sobre todos los hechos materiales en la controversia, no procede una sentencia sumaria.**

Al dictar una sentencia sumaria el Tribunal deberá realizar un análisis dual el cual consiste en: (1) analizar los documentos que acompañan la solicitud de sentencia sumaria y los que se incluyen con la moción en oposición, así como aquellos que obren en el expediente del tribunal; y (2) determinar si el oponente de la moción controvirtió algún hecho material y esencial, o si hay alegaciones de la demanda que no han sido controvertidas o refutadas en forma alguna por los documentos. *Vera v. Dr. Bravo*, *supra*, pág. 333. Una vez realizado este análisis el tribunal no dictará sentencia sumaria cuando: (1) existen hechos materiales y esenciales controvertidos; (2) hay alegaciones afirmativas en la demanda que no han sido refutadas; (3) surge de los propios documentos que se acompañan con la moción una controversia real sobre algún hecho material y esencial; o (4) como cuestión de derecho no procede*. Id*. págs. 333-334. Un tribunal "abusa de su discreción cuando actúa de forma irrazonable, parcializada o arbitraria." *Matías Lebrón v. Depto. Educación*, 172 DPR 859, 875 (2007). Por tanto, corresponde al Tribunal conceder o denegar, en el ejercicio de su discreción, los remedios correspondientes de acuerdo con las circunstancias del litigio.

**III**

La peticionaria plantea que el foro primario erró al denegar su solicitud de sentencia sumaria, a pesar de entender que demostró justa causa para el despido y la inexistencia de discrimen por razón de edad, y no acoger como hechos no controvertidos los que estableció en su solicitud de sentencia sumaria. Asimismo, Caribbean Restaurants sostiene que el TPI incidió al denegar su solicitud de sentencia sumaria y al concluir que existía controversia de hechos materiales alegando que realmente lo que hizo el foro primario fue exponer controversias de derecho. Al respecto concluimos que no les asiste la razón.

El TPI expresó en su Resolución, sobre lo que hallaba en controversia como fundamento para no resolver el pleito mediante sentencia sumaria, lo siguiente:

KLCE202400898 13

> Las controversias que encuentra este Tribunal existentes en este pleito versan sobre:
>
> Los hechos referentes a la alegación de hostigamiento sexual contra el señor Eric A. Rodríguez Cruz, incluyendo los actos que se desprenden de los videos presentados y los testimonios de las partes involucradas;
>
> Las circunstancias y motivaciones del despido del señor Eric A. Rodríguez Cruz, incluyendo posibles motivos discriminatorios basados en la edad; y
>
> Los hechos referentes a la investigación realizada por Caribbean Restaurants, LLC, en relación con las alegaciones de hostigamiento sexual.[12]

De una lectura somera, claramente se desprende que las controversias delineadas por el foro primario responden a hechos materiales del caso y no se tratan de controversias de derecho como alega la peticionaria. Ello porque nos enfrentamos a una reclamación de despido injustificado donde la tarea del tribunal descansa en hacer la determinación de si medió justa causa para el despido o no y que el patrono no haya actuado de manera arbitraria o caprichosa. Para lograr este análisis es necesario revisar las circunstancias del caso, particularmente los hechos atados a las alegaciones de hostigamiento sexual y **estos hechos se basan fundamentalmente en credibilidad de las partes involucradas**.[13] Se trata de un asunto que el tribunal está impedido de dirimir mediante el uso del mecanismo de sentencia sumaria donde el foro *a quo* descansa primordialmente en prueba documental. Además, no podemos perder de vista que los casos laborales deben ser interpretados de manera más favorable para el empleado.

A pesar de que la peticionaria alega que la controversia se trata de determinar si el despido fue justificado o no, y no acerca de determinar si se configuró el hostigamiento sexual, la realidad es que es necesario y crucial resolver si hubo hostigamiento sexual pues esto es lo que da pie a

---

[12] Apéndice, *Resolución* de 17 de julio de 2024, notificada el 18 de julio de 2024, pág. 839; SUMAC Entrada 67.

[13] El Artículo 4 de la *Ley para Prohibir el Hostigamiento Sexual en el Empleo* provee lo siguiente:

> Para determinar si la alegada conducta constituye hostigamiento sexual en el empleo se considerará la totalidad de las circunstancias en que ocurrieron los hechos. La determinación de la legalidad de una acción se hará basada en los hechos de cada caso en particular. 29 LPRA sec. 155c.

la justa causa para el despido. Por lo tanto, una vez examinado con detenimiento el expediente que tuvimos ante nosotros no encontramos nada en el mismo, ni en los fundamentos expuestos por la peticionaria, que nos lleve a concluir que con su determinación el TPI incurrió en error, prejuicio o parcialidad ni actuó contrario a derecho. Siendo ello así, no intervendremos con la determinación del honorable foro primario y el así hacerlo no constituye un fracaso a la justicia. En consecuencia, y en el ejercicio de nuestra discreción, denegamos la expedición del recurso de *certiorari* solicitado al amparo de la Regla 40 del Reglamento del Tribunal de Apelaciones, *supra*.

**IV**

Por las expresiones que anteceden, denegamos expedir el presente recurso de *certiorari*.

Notifíquese.

Lo acordó el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones